UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| THE ROBBINS COMPANY, an Ohio corporation,<br><br>    Plaintiff,<br><br>    v.<br><br>JCM NORTHLINK LLC, a Washington limited liability company,<br><br>    Defendant. | NO. C16-646RSL<br><br>ORDER GRANTING IN PART MOTION TO DISMISS AND CONVERTING TRO TO PRELIMINARY INJUNCTION |

This matter comes before the Court on defendant JCM Northlink LLC's "Motion to Dismiss," Dkt. # 44; plaintiff The Robbins Company's "Motion for Order to Show Cause Pursuant to RCW Chapter 7.64," Dkt. # 34; defendant's "Motion to Provide Additional Briefing Regarding Plaintiff's Motion for a Preliminary Injunction," Dkt. # 53; and defendant's "Motion to Provide Additional Briefing Regarding Temporary Restraining Order," Dkt. # 84.[1]  Having reviewed the parties' briefs and the remainder of the record, the Court finds as follows.

## BACKGROUND

On September 20, 2013, the parties entered into a Rental Agreement for a Tunnel Boring Machine (TBM) to be used by JCM in the Northlink N125 Project.  Article 20.2 of the Agreement states:

---

[1] Because the motion to dismiss this action is granted for the reasons described in this order, the Court will not address the merits of the later-filed motion to stay arbitration (Dkt. # 87).

ORDER GRANTING IN PART MOTION TO DISMISS
AND CONVERTING TRO TO PRELIMINARY INJUNCTION - 1

> Unless both Parties mutually agree otherwise, it is agreed that any dispute, controversy or claim arising out of or in connection with this Agreement, including any question regarding its existence, validity or termination, which cannot be resolved amicably, will be finally settled by binding arbitration under the Rules of Arbitration of the International Chamber of Commerce by one or more arbitrators appointed in accordance with such rules.

Dkt. # 1-1 at 12. After difficulties encountered in the tunneling – the cause of which is vigorously contested by the parties – the parties reached an impasse in their negotiations regarding the proper testing protocol for the TBM and its components. Fearing that JCM, which was in possession of the machine, would unilaterally perform testing, Robbins sought a TRO and preliminary injunction, among other remedies, in this Court. JCM defended against the motion for the TRO/preliminary injunction and has moved to dismiss all claims on the basis that they are properly subject to arbitration under the parties' Rental Agreement.

## DISCUSSION

**A. Interim Relief Before this Court**

As an initial matter, the Court will assess whether it is proper for this Court to grant interim relief. The Ninth Circuit has held that "a district court may issue interim injunctive relief on arbitrable claims if interim relief is necessary to preserve the status quo and the meaningfulness of the arbitration process . . . ." Toyo Tire Holdings Of Americas Inc. v. Cont'l Tire N. Am., Inc., 609 F.3d 975, 981 (9th Cir. 2010). Consistent with this rule, the International Chamber of Commerce Arbitration Rules allow the parties to "apply to any competent judicial authority for interim or conservatory measures." ICC Arbitration Rules Art. 28(2). Seeking interim or conservatory measures "shall not be deemed to be an infringement or a waiver of the arbitration agreement and shall not affect the relevant powers reserved to the arbitral tribunal." Id.; see also Art. 29(7). While the parties agree that it is appropriate for this Court to issue some preliminary relief, they disagree regarding the appropriate scope of that relief. JCM contends that the Court's most recent order modifying the previously-entered TRO sufficiently preserves the status quo and the meaningfulness of the arbitration process. See Dkt. # 77 at 2-4. Robbins

ORDER GRANTING IN PART MOTION TO DISMISS
AND CONVERTING TRO TO PRELIMINARY INJUNCTION - 2

contends that the Court should issue further orders as "interim or conservatory" measures, including granting its replevin claim. See Dkt. # 75 at 5-6.

On May 13, 2016, the Court issued a TRO. Dkt. # 38. At the June 2, 2016, hearing, the Court indicated it would rule on the motion to dismiss before making a determination on the motion for a preliminary injunction or the motion for replevin, and that in the interim, the TRO would continue in full force and effect. Dkt. # 66. On June 14, 2016, the Court modified the TRO slightly. Dkt. # 76. It is appropriate for the Court to order interim relief, and the Court will now consider the appropriate scope of that relief.[2]

**1. Preliminary Injunction**

The Court continued the TRO but has not entered a preliminary injunction. Under Toyo, the Court may enter a preliminary injunction to provide interim relief and preserve the status quo.[3] A plaintiff seeking a TRO or preliminary injunction must establish: 1) a likelihood of success on the merits, 2) that it is likely to suffer irreparable harm in the absence of preliminary relief, 3) that the balance of equities tips in its favor, and 4) that an injunction is in the public interest. Toyo, 609 F.3d at 975. Having concluded that plaintiff has made the necessary showing, the Court converts the previously-entered TRO, as modified, into a preliminary injunction, for the reasons set forth below.[4] See Dkt. ## 38, 76.

---

[2] Defendant filed an unopposed "Motion to Provide Additional Briefing Regarding Plaintiff's Motion for a Preliminary Injunction." Dkt. # 53. The Court grants this motion and has considered the additional briefing (Dkt. # 54).

[3] Defendant filed a "Motion to Provide Additional Briefing Regarding Temporary Restraining Order." Dkt. # 84. The purpose of the additional briefing would be to "further inform the Court of the potential necessary length of the Temporary Restraining Order . . . ." Id. at 2. Plaintiff opposed the motion. Dkt. # 86. The Court does not does not find it necessary to consider the potential length of the interim relief in making its decision and therefore DENIES defendant's motion to provide additional briefing.

[4] The Court had previously requested that the parties set forth their positions regarding preservation measures. Dkt. # 76 at 3. After reviewing the parties' submissions (Dkt. ## 68, 78), the Court will allow the TBM to be covered with a tarp and heated, as set forth in the declaration of Robert

ORDER GRANTING IN PART MOTION TO DISMISS
AND CONVERTING TRO TO PRELIMINARY INJUNCTION - 3

**a. Likelihood of Success on the Merits**

Robbins's complaint contains claims under Washington's Uniform Trade Secrets Act, for specific performance of the confidentiality and non-disclosure provisions of the Rental Agreement, for general equitable relief, and for replevin. Dkt. # 1 at 6-13. Because the Court finds that Robbins's claim for specific performance warrants a preliminary injunction, it will not address plaintiff's likelihood of success on its other claims. See Pratt v. Rowland, 65 F.3d 802, 805 (9th Cir. 1995) (addressing only one of plaintiff's claims in assessing appropriateness of preliminary relief, following approach of district court).

Section 23.1 of the Rental Agreement provides:

> (i) All the documents and all information one Party makes available to the other concerning any aspect of the Equipment shall be received and examined by the other Party under the strict obligation of maintaining confidentiality.
> (ii) The aforesaid documents and information shall be treated as confidential information, and its contents shall be exclusively limited to the persons in charge of execution of the Tendered Work.

Dkt. # 1-1 at 12-13. Plaintiff argued that opening the cutterhead support assembly (CHS), particularly with third parties present, would violate JCM's obligation to maintain the confidentiality of information concerning the Equipment, in violation of paragraph (i). In addition, plaintiff contends that the third parties JCM intended to be involved in the testing are unrelated to the "Tendered Work" (the tunneling project) and therefore any testing would also be in violation of paragraph (ii). Dkt. # 3 at 15. Defendant responds that these "clauses do not address the disassembly of the CHS or make the CHS a proprietary design which requires confidentiality. They only cover documents or information concerning the equipment." Dkt. # 17 at 17. Defendant also asserts that the "TBM itself is the source of the information" and that the confidentiality clause does not extend to evaluations of the TBM because JCM is required to

---

Budny, Dkt. # 71 ¶ 6, and additionally subject to the preservation measures described in the declaration of Brian Khalighi, Dkt. # 78-3 ¶ 6. The preservation measures shall be taken with representatives from both parties present. These measures may be modified or the TBM may be moved to another storage location by agreement of the parties or an order by the Court or the arbitration tribunal.

ORDER GRANTING IN PART MOTION TO DISMISS
AND CONVERTING TRO TO PRELIMINARY INJUNCTION - 4

keep confidential only information it receives from Robbins. Dkt. # 54 at 8.

"Information" is not defined in the Agreement, see Dkt. # 1-1 at 2-3, but it is defined broadly in common usage: "the communication or reception of knowledge . . . ." Webster's New Collegiate Dictionary 592 (1977). Knowledge received by disassembling, inspecting, or testing the CHS assembly would fall under this definition of information. JCM obtained the TBM, and the information that could be learned by disassembling or testing it, from Robbins. Under the terms of the Agreement, JCM is required to maintain that information's confidentiality. Therefore, plaintiffs have shown a likelihood of success on the merits of the specific performance claim.

### b. Likelihood of Irreparable Harm in the Absence of Preliminary Relief

Without preliminary relief, Robbins is likely to suffer irreparable harm in two respects: disclosure of information regarding its equipment that it has sought to keep confidential, and which may constitute proprietary information or trade secrets, and the risk of damage to the equipment that will render it unrepairable and lead to loss of customers. Dkt. # 1 at 10-11; Dkt. # 6 at 2-4. JCM contends that its willingness, and the willingness of third party testing companies, to sign non-disclosure agreements, eliminates any risk of disclosure of Robbins's information; that disassembly of the CHS will be performed by qualified individuals; that any damage to the CHS can be remedied with money damages; and that the TBM and specifically the CHS assembly will be unavailable for use for the duration of the arbitration proceeding in any case. Dkt. # 17 at 18-20; Dkt. # 54 at 10-11.

The disclosure of Robbins's information that is confidential, proprietary, or constitutes trade secrets alone is sufficient to show a likelihood of irreparable harm. Cf. Pac. Aerospace & Elecs., Inc. v. Taylor, 295 F. Supp. 2d 1188, 1198 (E.D. Wash. 2003) ("An intention to make imminent or continued use of a trade secret or to disclose it to a competitor will almost always certainly show irreparable harm." (internal quotation marks and alteration omitted)). Once confidential information about Robbins's equipment is disclosed, it cannot be recovered. JCM's

ORDER GRANTING IN PART MOTION TO DISMISS
AND CONVERTING TRO TO PRELIMINARY INJUNCTION - 5

1  assurances regarding non-disclosure agreements it or third parties may be willing to sign and the
2  competence of the parties performing testing or disassembly are inadequate to demonstrate there
3  is not a likelihood of harm to Robbins.  During this action, JCM has shown a willingness to act
4  in ways that it perceives to be to its own advantage, regardless of Robbins's wishes or pending
5  motions before the Court.  Specifically, JCM attempted to begin testing the TBM against
6  Robbins's wishes and while Robbins's motion for a TRO or preliminary injunction was pending
7  before this Court.  Against this backdrop, the Court is not assured by JCM's representations.
8  The Court also finds that there is a likelihood that the contemplated testing will damage the
9  equipment beyond repair, thus harming JCM's ability to provide the machinery to another
10 customer, which is particularly damaging given the relatively small group of potential
11 customers.  See Dkt. # 6 at 4.  The fact that the equipment may be unavailable for the duration of
12 arbitration does not negate harm that Robbins may suffer from continued unavailability of one of
13 its machines following the resolution of the parties' dispute.  Robbins therefore has shown a
14 likelihood of irreparable harm if it is not granted preliminary relief.

### c. Balance of Equities

Both parties have an interest in testing the equipment.  Entering a preliminary injunction, subject to modification by the arbitration tribunal, will allow the parties to thoroughly present their positions regarding the appropriate testing protocol.  Preventing either party from performing testing until the arbitration tribunal is able to make a ruling serves both parties' interests.  Also weighing in favor of granting the preliminary injunction is the key fact that the machine is owned by Robbins, and that the Rental Agreement does not contemplate testing of the scope and nature identified as necessary by JCM.  The balance of equities therefore favors granting a preliminary injunction.

### d. Public Interest

The parties agree that individuals and entities who are not parties to this action – such as suppliers, subcontractors, individuals affected by sinkholes along the tunnel, and members of the

ORDER GRANTING IN PART MOTION TO DISMISS
AND CONVERTING TRO TO PRELIMINARY INJUNCTION - 6

public at large who will be affected by any impact on the public coffers – have an interest in having thorough testing performed. See Dkt. # 3 at 17-18; Dkt. # 17 at 24-25. Granting a preliminary injunction that preserves the status quo until the arbitration tribunal rules on the appropriate testing regime is in the public interest.

### e. Duration of the Preliminary Injunction

As discussed below, the Court has determined that it is appropriate to grant JCM's motion to dismiss. The preliminary injunction will remain in effect until dissolved or modified by the arbitration tribunal or this Court. See, e.g., Wells v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 919 F. Supp. 1047, 1055 (E.D. Ky. 1994) (injunction to remain in effect until modified or dissolved by the court or arbitration panel); Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Patinkin, 1991 WL 83163, at *6 (N.D. Ill. May 9, 1991) (extending "TRO until July 1, 1991, or until the arbitration panel is able to address whether the TRO should remain in effect"). Until this injunction is dissolved, the Court will retain jurisdiction to maintain or modify the injunctive relief and the bond posted by Robbins, Dkt. # 39, shall remain in effect.

### 2. Replevin

Plaintiff contends that the Court should grant its motion for replevin (Dkt. # 33) as an "interim and conservatory measure" pending arbitration. Dkt. # 75 at 5. Plaintiff's argument ignores the rule in the Ninth Circuit that the Court may grant interim relief if it "is necessary to preserve the status quo and the meaningfulness of the arbitration process . . . ." Toyo, 609 F.3d at 981. Replevin is not necessary for either purpose in this case. The Court's preliminary injunction order will preserve the status quo until further decisions from the arbitration tribunal. Granting plaintiff's motion for replevin would disrupt the status quo by placing the TBM under Robbins's control without safeguards to protect JCM's interest in testing the equipment. Moreover, granting the replevin action would undermine the meaningfulness of the arbitration process. The Rental Agreement preserved for arbitration "any dispute, controversy or claim arising out of or in connection with this Agreement . . . ." Dkt. # 1-1 at 12. If the Court were to

ORDER GRANTING IN PART MOTION TO DISMISS
AND CONVERTING TRO TO PRELIMINARY INJUNCTION - 7

delve into the Agreement and competing claims of possession under it, doing so would undermine the arbitration process. While in some situations, granting a writ of possession or a motion for replevin would preserve the status quo and the arbitration process, this is not one of those situations.[5] The Court will dismiss without prejudice plaintiff's claim for replevin because it is an issue for arbitration.

**B. Waiver of Right to Arbitration**

Robbins argues that JCM's litigation conduct has waived its right to arbitrate. Finding a waiver of the right to arbitrate is disfavored, and the party arguing in favor of waiver bears a heavy burden of proof. River House Dev. Inc. v. Integrus Architecture, P.S., 167 Wn. App. 221, 237, 272 P.3d 289, 297 (2012). Whether waiver has occurred depends on the facts presented in each case. Id. Factors that weigh in favor of finding waiver include: filing suit; extensive participation in litigation, including attending status conferences, agreeing to a trial date, providing discovery, and participating in motion practice regarding discovery; failing to request arbitration for seven months or more; answering the complaint without mentioning arbitration; and moving to compel arbitration after the opposing party filed a motion for summary judgment. Saili v. Parkland Auto Ctr., Inc., 181 Wn. App. 221, 226-27, review denied, 337 P.3d 326 (Wash. 2014) (reviewing cases and assessing factors). Factors that weigh against finding waiver include: referring to the arbitration clause in an answer; asserting the right to arbitration within three months; and participating only in limited discovery. Id.; Lake Washington Sch. Dist. No. 414 v. Mobile Modules Nw., Inc., 28 Wn. App. 59, 63 (1980). The fundamental question is whether "as the events unfolded, the party's conduct reached a point where it was inconsistent

---

[5] Plaintiff relies upon Danieli & C. Officine Meccaniche S.p.A. v. Morgan Constr. Co., 190 F. Supp. 2d 148 (D. Mass. 2002), to argue that granting replevin pending arbitration is appropriate in this case. The situation in Danieli involved different considerations than those at issue here. For one, had the Danieli court not granted plaintiff's replevin request, plaintiff would have been unable to meet other contractual obligations. Id. at 155. For another, the ball bearings at issue in Danieli were not evidence for the parties' arbitration, but were instead being held by defendant as a way to secure payment of an anticipated judgment. Id. Danieli therefore does not alter this Court's analysis.

ORDER GRANTING IN PART MOTION TO DISMISS
AND CONVERTING TRO TO PRELIMINARY INJUNCTION - 8

1   with any other intention but to forgo the right to arbitrate." River House, 167 Wn. App. at 238.

2   In this case, Robbins has not shown that JCM waived the right to arbitrate. JCM has not answered the complaint or conducted discovery. In its response to Robbins's motion for a TRO or preliminary injunction, JCM raised the parties' agreement to arbitrate. Dkt. # 17 at 2. Fifteen days after Robbins filed its complaint, JCM moved to dismiss the action based upon the arbitration clause. Dkt. ## 1, 44. Although JCM has rigorously asserted its positions before this Court, all of its efforts have fallen within the scope of the ICC Arbitration Rules allowing a party to seek interim or conservatory measures before a competent judicial authority without affecting the powers reserved to the arbitral tribunal. See ICC Arbitration Rules Art. 28(2). The Court therefore concludes that JCM has not waived its right to arbitrate Robbins's claims against it.

**C. Scope of Arbitration Agreement**

The Rental Agreement provides that it "shall be construed and interpreted in accordance with the laws of the USA and the state of Washington." Dkt. # 1-1 at 14. "Washington law vests courts with the power to determine whether a controversy is subject to an agreement to arbitrate." Saleemi v. Doctor's Associates, Inc., 176 Wn.2d 368, 376 (2013) (internal quotation marks and alterations omitted). The arbitration provision in the Rental Agreement sweeps broadly, covering "any dispute, controversy or claim arising out of or in connection with this Agreement . . . ." Dkt. # 1-1 at 12. Robbins does not dispute that its claims fall within the scope of the Rental Agreement's arbitration provision. See generally Dkt. # 75. Instead, Robbins argues that JCM's potential claims fall outside the arbitration agreement. Id. at 10-11. JCM, however, has not asserted any claims here and moves to dismiss Robbins's claims under the Washington Uniform Trade Secrets Act, for specific performance of the Rental Agreement, for general equitable relief, for replevin, and for a preliminary injunction. Dkt. # 44 at 5-8. These claims all arise out of the Rental Agreement, which allowed JCM to rent the TBM from Robbins. Accordingly, these claims are properly subject to arbitration. Therefore, having granted the interim relief necessary to preserve the status quo, the Court dismisses plaintiff's

ORDER GRANTING IN PART MOTION TO DISMISS
AND CONVERTING TRO TO PRELIMINARY INJUNCTION - 9

claims.

## CONCLUSION

For the foregoing reasons, the Court: GRANTS "Defendant's Motion to Provide Additional Briefing Regarding Plaintiff's Motion for a Preliminary Injunction" (Dkt. # 53); DENIES defendant's "Motion to Provide Additional Briefing Regarding Temporary Restraining Order" (Dkt. # 84); DENIES without prejudice "The Robbins Company Motion for Order to Show Cause Pursuant to RCW Chapter 7.64" (Dkt. # 33); and GRANTS in part defendant's "Motion to Dismiss" (Dkt. # 44). The Court has converted the TRO, as modified above, into a preliminary injunction, which may be modified by further order of this Court or the ICC arbitration tribunal. The action is hereby DISMISSED.

DATED this 9th day of August, 2016.

Robert S. Lasnik
United States District Judge

ORDER GRANTING IN PART MOTION TO DISMISS
AND CONVERTING TRO TO PRELIMINARY INJUNCTION - 10